UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGINA S. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV711 JCH |
| ) | |
| SCHNUCK MARKETS, INC., and ) | |
| DON WAGNER ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Don Wagner and Schnuck Markets, Inc.'s Joint Motion for Summary Judgment, filed November 8, 2005. (Doc. No. 3). Plaintiff Georgina Smith alleges that Don Wagner, her supervisor at Schnuck Markets ("Schnucks"), sexually harassed her, and that she was then terminated in retaliation for her refusal to comply with his demands. Smith's Complaint alleges violations of Title VII, the Missouri Human Rights Act, as well as the torts of assault and tortious interference with business expectancy. For the reasons stated below, Defendants Motion for Summary Judgment is granted in part and denied in part.

## BACKGROUND

Plaintiff Georgina Smith was employed by Schnucks as a cashier and checker since 1987. (Defendants' Statement of Uncontroverted Material Facts ("DSUMF"), Doc. No. 34 ¶ 1-2). She was also a party to a series of collective bargaining agreements ("CBAs") as a member of United Food and Commercial Workers, Local 655 ("Local 655"). (DSUMF ¶¶ 3-4). Defendant Don

1

Wagner was the Co-Manager of the store in which Smith worked. (DSUMF ¶ 13). Wagner was Smith's supervisor for ten years. (DSUMF ¶ 14).

On November 2, 2002, two Schnucks employees reported to Wagner that they smelled alcohol on Smith's breath. (DSUMF ¶¶ 29-34; Affidavits and Statements, Doc. No. 33, attached exhs. J, L, R, S). Wagner then visited Smith at her checkout aisle and also smelled alcohol on her breath. He also observed that she seemed very nervous. (DSUMF ¶¶ 35-37; Wagner Affidavit and Statement, Doc. No. 33, attached exhs. H, T). Wagner reported this information to the store manager, who agreed that Smith should be tested for alcohol and drugs. (DSUMF ¶ 39; Affidavit and Statement, Doc. No. 33, attached exhs. H, T). The CBA that was then in effect allowed drug testing on reasonable suspicion of drug use. (DSUMF ¶ 40; Collective Bargaining Agreement, Doc. No. 33, attached exh. FF, at 21).

Smith alleges that while he was her supervisor, Wagner flirted with her, but she rejected his advances.[1] (First Amended Complaint, Doc. No. 14 ¶ 16). Her allegations of the events of November 2 are as follows:

> 17. In retaliation [for rejecting his advances] Defendant Wagner had Georgina Smith pulled from work without any reasonable belief that she was intoxicated, or any other legitimate justification.
> 18. Defendant Wagner stated that if Georgina Smith did not submit to the alcohol test, she would be terminated on the spot.
> ...
> 20. Fearing for her job, Georgina Smith agreed to take an alcohol test.
> 21. Defendant Wagner insisted that Georgina Smith ride with him, and him alone, to the testing facility. When Georgina Smith began to sit in the rear seat of Defendant Wagner's car, Defendant Wagner demanded that Georgina Smith sit next to him in the front passenger seat. Plaintiff Georgina Smith involuntarily complied with the demand.
> 22. During the drive to the testing facility, Defendant Wagner's attitude abruptly changed toward Georgina Smith and he was overly friendly towards her

---

[1] She alleges that her rubbed against her back, held her hand while giving her money, and breathed on her neck. (DSUMF ¶ 113; Smith Deposition, Doc. No. 33, attached exh. C, at 266-67). She never reported any of this because she did not feel that it was sexual harassment. (DSUMF ¶ 114-115; Smith Deposition, Doc. No. 33, attached exh. C, at 268).

during the drive and drove her to the parking lot [of] a bachelor-friend's apartment and pointed it out to Georgina Smith.

23. Eventually Defendant Wagner drove the car to the purported[] testing facility. However, when they arrived at the purported testing facility, it was closed.

24. Defendant Wagner then took Georgina Smith to a hospital parking lot and told her that if she did not "take care of him" (meaning sexual contact), he would "take care of her" (meaning fire her).[2]

25. Defendant Wagner's sexual demand, forcing Plaintiff Georgina Smith to sit in front of the car next to him, and driving her to locations where sexual contact could be accomplished, were all done by Defendant Wagner with the intent to cause immediate sexual contact between Plaintiff Georgina Smith and Defendant Wagner.

...

28. Plaintiff Georgina Smith refused Defendant Wagner's unwelcome sexual demand. Mr. Wagner then required her to go into the hospital for the alcohol test.

29. The alcohol test at the hospital was negative and showed that Georgina Smith had not consumed alcohol.

30. When the alcohol test came back negative while Georgina Smith and Don Wagner were still in the hospital, Defendant Wagner became immediately agitated and apologetic.

31. Defendant Wagner drove Georgina Smith back to work, and he told Georgina Smith that he did not want "this" to get back to his wife.

(First Amended Complaint, Doc. No. 14).

Smith took a breathalyzer test for the presence of alcohol. The hospital also collected a urine sample for drug testing. (DSUMF ¶¶ 51-52). Her urine sample tested positive for the presence of marijuana. (DSUMF ¶ 57; Test Report, Doc. No. 33, attached exh. Z). On November 6, 2002, Jenise Kramer, the Manager of Equal Employment Opportunity and Counseling at Schnucks, was informed that Smith had tested positive for marijuana use. (DSUMF ¶¶ 27, 60; Kramer Affidavit and Fax, Doc. No. 33, attached exhs. B, BB). Kramer telephoned Smith on November 8, 2002 to inform her of the test results. (DSUMF ¶ 61). Later that day, Local 655 filed a grievance regarding Smith's being tested for alcohol and drugs. (DSUMF ¶ 62). Kramer then spoke to a Schnucks labor relations specialist and a representative

---

[2] Wagner never physically touched Smith during this incident. (DSUMF ¶ 95; Smith Deposition, Doc. No. 33, attached exh. C, at 200)

of Local 655, who informed her that Schnucks normally terminated associates for drug use. (DSUMF ¶¶ 63-68). On the basis of these conversations, Kramer recommended that Smith's employment be terminated. (DSUMF ¶ 69). The Schnucks labor relations specialist and the representative of Local 655 decided, however, that due to Smith's length of service, she should be allowed to continue her employment subject to completion of a drug rehabilitation program and successful passage of a drug test.[3] (DSUMF ¶¶ 70-71). The grievance was then considered settled. (DSUMF ¶ 80). On December 6, 2002, the union representative found that Smith had not entered a drug treatment program. (DSUMF ¶¶ 82-83). He then told the Schnucks labor relations specialist, who made the decision to terminate Smith's employment after consultation with the Schnucks director of labor relations. (DSUMF ¶¶ 84-85; Tedoni Affidavit, Doc. No. 33, attached exh. E). This decision was made based upon Smith's failed drug test and her failure to complete the drug treatment program. (DSUMF ¶ 86; Tedoni Affidavit, Doc. No. 33, attached exh. E).

The labor relations specialist mailed Smith a letter informing her of her termination. (DSUMF ¶ 88; Tedoni Affidavit and Letter, Doc. No. 33, attached exhs. E, D). When the labor relations specialist returned Smith's phone call regarding Smith's termination, Smith told her that Wagner that propositioned her for oral sex. (DSUMF ¶ 91; Tedoni Affidavit and Email, Doc. No. 33, attached exhs. E, CC). This was the first instance in which Smith told anyone about the alleged incident on November 2. (DSUMF ¶ 91; Tedoni Affidavit and Email, Doc. No. 33, attached exhs. E, CC; Smith Deposition, Doc. No. 33, attached exh. C, at 242-43). Neither the Schnucks labor relations specialist nor the labor relations director were aware of the

---

[3] Since 1997, ten Local 655 members have tested positive for drugs or alcohol. Of these, six were terminated. Three others were allowed to return to work subject to completion of a drug rehabilitation program and successful passage of a drug test. (DSUMF ¶¶ 73-75).

4

alleged harassment when they made the decision to terminate Smith. (DSUMF ¶ 102; Affidavits, Doc. No. 33, attached exhs. E, Q).

Schnucks maintains an anti-harassment policy, which is posted in employee areas at the stores as well as included in the employee handbook. (DSUMF ¶¶ 103-107). This policy names Kramer as one of the people to whom to report harassment. (DSUMF ¶ 107). Smith was aware of the policy. (DSUMF ¶ 108). After Smith reported the alleged incident, Kramer investigated the allegations by speaking to Wagner, and several other employees of the store where Smith worked. (DSUMF ¶ 111). Kramer was unable find anyone who could support Smith's allegations of harassment. (DSUMF ¶ 112).

Smith filed a grievance with Local 655 regarding her discharge. It was prosecuted through arbitration. (DSUMF ¶ 116; Transcript of Arbitration Hearing, Doc. No. 33, attached exh. G). During the arbitration proceeding, Smith testified about the alleged sexual harassment. (DSUMF ¶¶ 118-119). In his decision, the arbitrator rejected the allegation of sexual harassment. He found that Smith was not aware of the November agreement, that since she did not know of the agreement, she could not have violated it, and that she may continue her employment subject to entering drug treatment. (DSUMF ¶¶ 122-123; Arbitration Opinion and Award, Doc. No. 33, attached exh. GG). He further found that Smith must be given an opportunity to comply with the agreement. (DSUMF ¶ 123; Arbitration Opinion and Award, Doc. No. 33, attached exh. GG). On July 2, 2004, a Local 655 representative wrote to Smith, informing her of the arbitrator's decision and of the drug treatment condition to her reinstatement. (DSUMF ¶ 125; Letter, Doc. No. 33, attached exh. HH). Smith refused to comply with the conditions. (DSUMF ¶ 127; Smith Deposition, Doc. No. 33, attached exh. C, at 279-280). In August 2004, Local 655 informed Schnucks that Smith would not comply with the

conditions, and thus did not want her job back if subject to those conditions. (Letter, Doc. No. 33, attached exh. II).

Smith filed charges with the EEOC and the Missouri Commission on Human Rights ("MCHR"). (DSUMF ¶ 134, Charge of Discrimination, Doc. No. 33, attached exh. KK). These charges alleged discrimination based on sex and retaliation. (DSUMF ¶ 134). Schnucks was the only respondent named in both investigations. (DSUMF ¶¶ 136-143). Both the EEOC and the MCHR issued Right to Sue letters. (DSUMF ¶¶ 1138, 140).

Smith filed her original Complaint in this Court on June 8, 2004. (Doc. No. 1). Her First Amended Complaint was filed on March 7, 2005. (Doc. No. 14). She brings six counts:

> I) Sexual harassment and discrimination under Title VII against Wagner and Schnucks;
> II) Retaliation under Title VII against Wagner and Schnucks;
> III) Sexual harassment and discrimination under the Missouri Human Rights Act against Wagner and Schnucks;
> IV) Retaliation under the Missouri Human Rights Act against Wagner and Schnucks;
> V) Assault against Wagner
> VI) Tortious interference with business expectancy against Wagner and Schnucks.

(First Amended Complaint, Doc. No. 14). Defendants filed the Motion for Summary Judgment on November 8, 2005. (Doc. No. 33). Shortly after the Motion for Summary Judgment was filed, the parties requested the Court stay proceedings because of an impending settlement. (Motion for Settlement, Doc. No. 35). In January, the settlement agreement fell through. (Motion for Relief, Doc. No. 39). In April, after a series of hearings, the Court reinstated all pending motions, including the instant Motion for Summary Judgment. (Doc. No. 53). The Court also gave the now pro se Plaintiff Smith additional time to file a response to the Motion, and set an August 2006 trial date. Id. Plaintiff has not responded to the Motion for Summary Judgment.

6

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249. Though Plaintiff has not responded to the Motion for Summary Judgment, the Court must still determine if there is a genuine issue of material fact. Fed. R. Civ. P. 56(c).

**DISCUSSION**

The Court will address the Motion for Summary Judgment separately as to each defendant.

I.  **Defendant Wagner**

   A.  **Title VII and MHRA Claims**

Counts I and II of Smith's Complaint are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e. Counts III and IV are under the Missouri Human Rights Act, Mo. Rev. Stat. § 213.070. Defendants argue that Smith's Title VII and MHRA claims cannot succeed as a matter of law, because individuals cannot be held liable under these statutes. The Court agrees. Individuals, even supervisors who allegedly participated in the harassment, are not liable under Title VII. Spencer v. Ripley County Bank, 123 F.3d 690 (8th Cir. 1997). Similarly, supervisors cannot be liable under the Missouri Human Rights Act.[4] Lenhardt v. Basic Inst. of Tech., 55 F.3d 377, 381 (8th Cir.1995) (predicting that the Missouri Supreme Court would hold that the definition of "employer" in the MHRA does not subject employees, including supervisors, to individual liability).

Defendant Wagner's Motion for Summary Judgment on Counts I through IV is granted.

   B.  **Assault**

Count V of the Complaint is for assault, against Defendant Wagner. Defendant Wagner argues that Smith's assault claim fails as a matter of law because she "cannot prove Wagner's

---

[4] The Missouri Supreme Court has yet to decide this issue. In recent years, several courts have criticized the holding in Lenhart, doubting that the Missouri Supreme Court would hold the same way. Hill v. Ford Motor Co., 324 F.Supp. 2d 1028, 1032 (E.D. Mo. 2002); Fortner v. City of Archie, Missouri, 70 F.Supp. 2d 1028, 1030-31(W.D.Mo. 1999).

8

intent to cause bodily harm or offensive contact or an apprehension of bodily harm or offensive contact." (Memorandum in Support of Motion for Summary Judgment, Doc. No. 33, attachment 2, at 16). To prove assault, Smith must prove "(1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." Phelps v. Bross, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002) (citing M.A.I. § 23.01). "[A] actual violence or offensive contact is unnecessary to constitute assault. Rather the assault is complete if the intent, with the present means of carrying it into effect, exists, and preparations therefor have been made." Phelps, 73 S.W.3d at 656.

The claim for assault is based on Wagner's alleged actions on November 2, 2002. Specifically, Wagner's alleged insistence that she "take care of him" or he would fire her, and also that she ride in the front seat of the car next to him. (Amended Complaint, Doc. No. 14 ¶ 70). Wagner argues that he never made any physical contact with her, that he "never attempted to force Plaintiff to engage in oral sex, nor did he try further [to] persuade her to accede to his request, nor did he even attempt to keep her in the vehicle."[5] (Memorandum in Support, Doc. No. 33, attachment 2, at 17). He further points to Smith's willingly getting back into the car, completing two more days of work and not reporting the incident to Schnucks representatives, her husband, a union representative, or police. He asserts that consideration of all of the facts and circumstances demonstrate that he did not have the intent necessary to commit assault.

The Court disagrees. First, the Court notes that the only admissible evidence in the record is Smith's deposition transcript. She testified that Wagner told her to "take care of [him] or [he] will take care of [her]." (Smith Deposition, Doc. No. 34, attached exh. C, at 202). He

---

[5] Wagner's affidavit does not contradict any of Smith's allegations of that day. (Wagner Affidavit, Doc. No. 39, attached exh. H). There is no deposition testimony from Wagner in the record.

9

then became angry when she refused. Id. Viewing the evidence in the light most favorable to Smith, the non-moving party, there is an issue of fact of whether Wagner had the intent to commit assault. From her earlier rejection of his advances, he should have known that she was not interested in a sexual relationship, and yet he demanded that she perform a sexual act on him. This sexual act would have been an offensive contact, and his demand shows that he had the intent to cause that offensive contact.[6]

A reasonable jury could find from this evidence that Wagner had the intent necessary to commit assault. Defendant Wagner's Motion for Summary Judgment on Count V is denied.

### C. Tortious Interference with Business Expectancy

Defendant Wagner next argues that Smith's count for tortious interference with business expectancy against him must be dismissed, because only third parties can be liable for this tort. For Smith to succeed in her claim of tortious interference with a business expectancy, she must prove "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Nazeri v. Missouri Valley College, 860 S.W.2d 303, 316 (Mo. 1993). The party interfering with the business relationship must be a third party. Fields v. R.S.C.D.B., Inc., 865 S.W.2d 877, 879 (Mo. Ct. App. 1993). Wagner was Schnucks' agent

---

[6] Moreover, Wagner could have known that she was feeling especially scared and vulnerable, having just been accused of being drunk at work. He had already made her sit in the front seat with him, even though she had wanted to sit in the back. (Smith Deposition, Doc. No. 34, attached exh. C, at 200), and repeatedly told her to move closer to him while he was driving. (Smith Deposition, Doc. No. 34, attached exh. C, at 200). He then demanded that she perform a sexual act on him, or he would fire her. (Smith Deposition, Doc. No. 34, attached exh. C, at 202). He could have known that she believed that he, as her supervisor, had the power to fire her. A man in a position of power, demanding a sexual act of a woman shut in an enclosed space with him, could be seen as having intent to cause an offensive contact with her. His alleged statement, along with the surrounding circumstances, could show intent.

10

(First Amended Complaint, Doc. No. 14 ¶14) and thus also may not, as a matter of law, be held liable for tortious interference with business expectancy. Fields, 865 S.W.2d at 879.

Defendant Wagner's Motion for Summary Judgment on Count VI is granted.

## II. Defendant Schnucks

### A. Sexual Harassment under Title VII and MHRA

Smith brings counts for sexual harassment under both Title VII and MHRA.[7] Based on the Complaint, she could be asserting a hostile work environment claim or a *quid pro quo* claim. Defendant Schnucks argues that Smith can prove neither against it. The Court agrees.

#### 1. Hostile Work Environment

To prevail on a hostile work environment claim, a plaintiff must prove "(1) that [she] is a member of a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition or privilege of her employment." Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004). Smith cannot establish a *prima facie* case of a hostile work environment based on sex. Her allegations fail to satisfy the fourth element of her *prima facie* case, that the harassment affected a term, condition or privilege of her employment. "An employee is subject to hostile work environment sexual harassment when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meriwether v. Caraustar Pack. Co., 326 F.3d 990, 993 (8th Cir. 2004). "In determining whether

---

[7] The same analysis applies to both Title VII and MHRA claims. LeGrand v. Area Resources for Community and Human Services, 394 F.3d 1098, 1101 (8th Cir. 2005).

11

the conduct is sufficiently severe or pervasive, we look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Duncan v. General Motors, 300 F.3d 928, 934 (8th Cir. 2002) (internal quotations omitted).

The only specific incident that Smith points to in support of her sexual harassment claim is the November 2 event where Wagner allegedly demanded a sexual act from her. (First Amended Complaint, Doc. No. 14 ¶¶ 16-31). Although abhorrent, this behavior falls short of the "demanding standard" the Supreme Court and the Eighth Circuit have set for hostile work environment claims. See LeGrand, 394 F.3d at 1102 (8th Cir. 2005). In Duncan, after the plaintiff rejected a co-worker's proposition, he engaged in a number of objectionable activities over a period of several years. Among other things, he told her to use his computer, which displayed a photo of a naked woman, instructed her to draw an obscene cactus planter that he kept in his office, showed her on several occasions a pacifier shaped like a penis, on four or five occasions unnecessarily touched her hand when giving her the telephone, created and displayed a poster that portrayed her as "president and CEO of the Man-Hater's Club," and asked her to "type a draft of the beliefs of the 'He-Men Women Hater's Club.'" Duncan, 300 F.3d at 931-32. The Eighth Circuit reversed a jury verdict in favor of the plaintiff, explaining that the co-worker's "actions were boorish, chauvinistic, and decidedly immature, but we cannot say they created an objectively hostile work environment permeated with sexual harassment." Duncan, 300 F.3d at 935. See also LeGrand, 394 F.3d at 1102 (reviewing recent Eighth Circuit decisions on hostile work environment claims).

In contrast, in Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752 (8th Cir. 2003) the Eighth Circuit found that there were allegations sufficient to send the issue to the jury:

> On several occasions, Drake brushed up against her breasts, and frequently ran his fingers through her hair, rubbed her shoulders, and ran his finger up her spine. On more than one occasion he stood behind Eich and simulated a sexual act while Eich was bent over during handcuff training sessions. In the presence of Eich, the same officer simulated sexual acts with a nightstick by sliding the stick in and out of his hands and constantly rendered sexual innuendos directed to her and other female employees in the Department. Eich testified that Gillespie rubbed his hand up and down her leg, brushed up against her when they spoke, and pressed his groin into her shoulder while standing behind her. Eich was subjected to a long series of incidents of sexual harassment in her workplace which went far beyond "gender related jokes and occasional teasing."

Eich, 350 F.3d at 761.

Smith's allegations fall well short of those in Eich, and short even of those in Duncan. The Court finds that she cannot establish a *prima facie* case of a hostile work environment based on sex.

### 2. *Quid Pro Quo* Sexual Harassment

To prove a *quid pro quo* claim, a plaintiff must prove that "a tangible employment action follows the employee's refusals to submit to a supervisor's sexual demands." Henthorn, 359 F.3d at 1027. Smith's claim of *quid pro quo* sexual harassment also fails. On the record before the Court, there exists no issue of fact that Smith's termination did not result from her refusal of Wagner's demand.

Two co-workers reported to Wagner that they smelled alcohol on Smith's breath. (DSUMF ¶¶ 30-31; Affidavits and Statements, Doc. No. 33, attached exhs. J, L, R, S). Wagner then took Smith to the hospital to be tested for drug and alcohol use. (DSUMF ¶¶ 45-46; First Amended Complaint, Doc. No. 14 ¶¶ 28). The test showed that Smith had used marijuana, in violation of the terms of her employment. (DSUMF ¶ 56; Test Results, Doc. No. 33, attached exh. Z; Collective Bargaining Agreement, Doc. No. 33, attached exh. FF, at 21). Two members of the Schnucks labor relations department and a union representative decided that Smith could

continue her employment at Schnucks if she completed a drug rehabilitation program and passed a return-to-work drug test. (Affidavits, Doc. No. 33, attached exhs. B, E; Letter, Doc. No. 33, attached exh. HH). Don Wagner was not involved in the decision. (Affidavit, Doc. No. 33, attached exh. E). After Smith refused to comply with these conditions, her employment was terminated. (Affidavit, Doc. No. 33, attached exh. E). Don Wagner was also not involved in this decision. (Affidavit, Doc. No. 33, attached exh. E). The people who made the decision to terminate Smith did not know of the alleged harassment until after the decision had been made. (Affidavit, Doc. No. 33, attached exhs. E, CC).

There is significant evidence in the record to show that Smith was terminated for testing positive for drug use and refusing to comply with the conditions of employment, and there is no evidence in the record to the contrary. Smith has failed to establish a claim for *quid pro quo* sexual harassment.

Defendant Schnucks' Motion for Summary Judgment on Counts I and III is granted.

### B.  Retaliation under Title VII and MHRA

In the Motion for Summary Judgment, Defendant Schnucks next asserts that it is entitled to summary judgment on Plaintiff's retaliation claim, as Plaintiff fails to establish a *prima facie* case of retaliation in violation of Title VII or the MHRA.[8] The Eighth Circuit has held that in order to establish a *prima facie* case of unlawful retaliation, Plaintiff must show that: "(1) she filed a charge of harassment or engaged in other protected activity; (2) her employer subsequently took an adverse employment action against her; and (3) the adverse action was causally linked to the protected activity." Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th

---

[8] As with sexual harassment, the same standards apply to both Title VII and MHRA retaliation claims. Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 713 (8th Cir. 2000).

Cir. 2004) (citing Cross v. Cleaver, 142 F.3d 1059, 1071 (8th Cir. 1998)). The retaliation claim is analyzed under the McDonnell Douglas burden-shifting framework. Erenberg, 357 F.3d at 793.

"To present a prima facie case of retaliation, a plaintiff must show that [she] engaged in protected conduct, that [she] suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.1999) (en banc). Schnucks argues that Smith cannot establish a *prima facie* case of retaliation for three reasons: first, she did not engage in a statutorily protected activity, second, she cannot establish a causal connection, and third, because she was terminated for a legitimate, non-retaliatory reason. The Court agrees that Smith has not shown any causal connection, and that Schnucks had a legitimate, non-retaliatory reason to terminate her.

Assuming that Smith's rejection of Wagner's alleged demand was a protected activity, Smith did not "show [that Schnucks] had actual or constructive knowledge of the protected activity…." Buettner, 216 F.3d at 715. The record shows exactly the opposite. None of the decision makers involved in Smith's termination had knowledge of the alleged harassment until after the decision to terminate her had been made. (Affidavit, Doc. No. 33, attached exhs. E, CC). She thus could not have been terminated because she rejected Wagner's demand. Smith might also allege that Wagner forced her to take the drug test that led to her termination because she refused his demand. The record shows, however, that Wagner had a legitimate, pre-existing reason for requiring the drug test.

Even if Smith had established a *prima facie* case for retaliation, under the McDonnell Douglas analysis the burden then shifts to Defendants to prove that there was a legitimate, non-retaliatory reason for the action. Erenberg, 357 F.3d at 792. As discussed above, Schnucks terminated Smith's employment because she tested positive for marijuana use and because she

15

failed to complete a drug treatment program. (Affidavit, Doc. No. 33, attached exh. E). This is consistent with Schnucks' handling of other employees who tested positive for drug use. (Affidavit, Doc. No. 33, attached exh. B).

Defendant Schnucks' Motion for Summary Judgment on Counts II and VI is granted.

### C. Tortious Interference with Business Expectancy

Lastly, Defendant Schnucks argues that Smith's claim against it for tortious interference with business expectancy cannot succeed because it is not a third party to the relationship. As discussed above, the party allegedly interfering with the business relationship must be a third party. Fields, 865 S.W.2d at 879. Because Schnucks was a party to the business relationship, it cannot as a matter of law be liable for tortiously interfering with it.

Defendant Schnucks' Motion for Summary Judgment on Count VI is granted.

### III. Smith's Supplemental State Law Claim

The only claim that remains is Count V for assault against Wagner. As the parties are not diverse, the Court must decide whether to exercise pendant jurisdiction over this claim.

28 U.S.C. § 1367 provides in relevant part as follows:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–

(3) the district court has dismissed all claims over which it has original jurisdiction;....

28 U.S.C. § 1367(a) & (c).

The Eighth Circuit has held that district courts have "broad discretion" in deciding whether to exercise pendent jurisdiction over state law claims. Willman v. Heartland Hospital East, 34 F.3d 605, 613 (8th Cir. 1994), cert. denied, 514 U.S. 1018 (1995); see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assoc. of the Black Hills, 141 F.3d 1284, 1287-88 (8th Cir. 1998). Upon consideration, this Court will now exercise its discretion under 28 U.S.C. § 1367(c), and dismiss the remaining claim in Plaintiff's Amended Complaint without prejudice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Don Wagner's Motion for Summary Judgment on Counts I, II, III, IV, and VI (Doc. No. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Don Wagner's Motion for Summary Judgment on Count V (Doc. No. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that Schnuck Markets Inc.'s Motion for Summary Judgment on all counts (Doc. No. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that Count V of the First Amended Complaint (Doc. No. 14) is **DISMISSED** without prejudice.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 27th day of June, 2006.

                                              /s/ Jean C. Hamilton
                                              UNITED STATES DISTRICT JUDGE